UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ONE WORLD FILTER CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> KOSLOW TECHNOLOGIES CORPORATION AND EVAN E. KOSLOW <br><br> Defendants. | Civil Action No. 21-cv-10769-KPF |

## KTC AND KOSLOW'S MEMORANDUM OF LAW IN OPPOSITION TO OWFC'S MOTION TO VACATE AND REPLY IN SUPPORT OF CROSS-MOTION TO CONFIRM ARBITRATION AWARD

Wesley W. Whitmyer, Jr.
WHITMYER IP GROUP
600 Summer Street
Stamford, CT 06901

*Attorney for Defendants*
*Koslow Technologies Corporation and Evan E. Koslow*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................ i

**I.    INTRODUCTION** ............................................................................................. 1

**II.    BACKGROUND** .............................................................................................. 3

   A.  OWFC Brings Arbitration Claims Against KTC ......................................... 4

   B.  KTC Brings Counterclaims Against OWFC .............................................. 4

   C.  Arbitrators Are Appointed and The Arbitration Proceeding Commences .......... 5

   D.  The Tribunal Issues Partial Final Award Against OWFC's Claims and in Favor of KTC's Counterclaims .......................................................................................... 6

**III.    APPLICABLE LAW AND STANDARD OF REVIEW** ............................... 7

**IV.    ARGUMENT** ................................................................................................. 10

   A.  OWFC Has Not Met Its Burden to Prove That The Tribunal Exceeded Its Powers In Awarding KTC $18M In Damages for OWFC's Nonpayment of License Fees ............. 11

   B.  OWFC Has Not Met Its Burden to Prove that the Tribunal Exceeded Its Powers by Violating Its Contractual Requirement to Explain All Conclusions of Law and Fact ...... 15

   C.  OWFC Has Not Met Its Burden to Prove that the Tribunal's $18M Award Was in Manifest Disregard of the Law. .................................................................................. 16

   D.  OWFC Has Not Met Its Burden to Prove that the Tribunal's $18M Award Violates Public Policy. ................................................................................................................ 18

   E.  The Court Should Award KTC Attorney's Fees ...................................... 19

**V.    MOTION TO CONFIRM THE PARTIAL FINAL ARBITRATION AWARD** ...... 20

**VI.    CONCLUSION** ............................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

***Cases***

*Barbier v. Shearson Lehman Hutton, Inc.*,

    948 F.2d 117 (2d Cir. 1991) ................................................................................. 7

*Barzelatto v. Spire Sec., LLC*,

    2019 WL 8889865 (S.D.N.Y. 2019) ............................................................... 14, 20

*Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron*,

    688 F.2d 997 (5th Cir. 1982) ............................................................................. 19

*Cannelton Industries, Inc. v. District 17, United Mine Workers*,

    951 F.2d 591 (4th Cir. 1991) ............................................................................. 16

*Cat Charter. LLC v. Schurtenberger*,

    646 F.3d 836 (11th Cir. 2011) ........................................................................... 15

*Commodities & Minerals Enter. v. CVG Ferrominera Orinoco, C.A.*,

    49 F.4th 802 (2d Cir. 2022) ............................................................................... 20

*D. H Blair & Co., Inc. v. Gottdiener*,

    462 F.3d 95 (2d Cir. 2006) ............................................................................ 7, 15

*DiRussa v. Dean Witter Reynolds Inc.*,

    121 F.3d 818 (2d Cir. 1997) .............................................................................. 11

*Duferco Int'l. Steel Trading v. T. Klaveness Shipping A/S*,

    333 F.3d 383 (2d Cir. 2003) ............................................................... 8, 9, 16, 17

*Fellus v. Sterne, Agee & Leach, Inc.*,

    783 F. Supp. 2d 612 (S.D.N.Y. 2011) ............................................................... 11

i

*Florasynth, Inc. v. Pickholz*,

    750 F.2d 171 (2d Cir. 1984) ................................................................ 7

*Hall Street Associates, L. L. C. v. Mattel, Inc.*,

    552 U.S. 576 (2008) ................................................................ 1, 20

*Halligan v. Piper Jaffrey, Inc.*,

    148 F.3d 197 (2d Cir. 1998) ................................................................ 17

*Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*,

    774 F.2d 43 (2d Cir. 1985) ................................................................ 19

*Koch Oil, S.A. v. Transocean Gulf Oil Co.*,

    751 F.2d 551 (2d Cir. 1985) ................................................................ 20

*KT Corp. v. ABS Holdings, Ltd.*,

    784 F. App'x 21 (2d Cir. 2019) ................................................................ 20

*Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int'l Union*,

    954 F.2d 794 (2d Cir. 1992) ................................................................ 7

*N.Y.C. and Vicinity Dist. Council of United Bhd. of Carpenters and Joiners of Am. v. Ass'n of*

*Wall-Ceiling and Carpentry Indus. of N.Y., Inc.*,

    826 F.3d 611 (2d Cir. 2016) ................................................................ 10, 18

*Oxford Health Plans LLC v. Sutter*,

    133 S. Ct. 2064 (2013) ................................................................ 8, 11, 13, 14

*Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*,

    497 F.3d 133 (2d Cir. 2007) ................................................................ 7

*ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*,

    564 F.3d 81 (2d Cir. 2009) ................................................................ 12, 13

*Ross v. Am. Express Co.*,

    547 F.3d 137 (2d Cir. 2008) ................................................................... 12

*Saxis S.S. Co. v. Multifacs Intern. Traders, Inc.*,

    375 F.2d 577 (2d Cir. 1967) ................................................................... 16

*Seneca Nation of Indians v. New York*,

    988 F.3d 618 (2d Cir. 2021) ................................................................... 18

*Siegel v. Titan Indus. Corp.*,

    779 F.2d 891 (2d Cir. 1985) ................................................................... 16

*Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.*,

    18-cv-2714 (AJN) 2019 WL 1349527 (S.D.N.Y. Mar. 26, 2019) ........................................... 16

*Stmicroelectronics, N.V. v. Credit Suisse*,

    648 F.3d 68 (2d Cir. 2011) ................................................................... 20

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,

    559 U.S. 662 (2010) ................................................................... 11

*Sutherland Glob. Servs, Inc. v. Adam Techs. Int'l SA de C.V.*,

    639 F. App'x 697 (2d Cir. 2016) ................................................................... 12

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*,

    592 F.3d 329 (2d Cir. 2010) ................................................................... 1

*Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Prime Installations Inc.*,

    No. 23-cv-10349 (AS) (S.D.N.Y. Jan. 19, 2024) ................................................................... 19

*Tully Constr. Co. v. Canam Steel Corp.*,

    13 Civ. 3037 (PGG), 2015 U.S. Dist. LEXIS 25690 (S.D.N.Y. Mar. 2, 2015) ................... 15, 16

*United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC*,

    804 F.3d 270 (2d Cir. 2015) ............................................................. 9

*W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*,

    461 U.S. 757 (1983) ..................................................................... 10, 18

*Wallace v. Buttar*,

    378 F.3d 182 (2d Cir. 2004) ............................................................. 7

*Westerbeke Corp. v. Daihatsu Motor Co.*,

    304 F.3d 200 (2d Cir. 2002) .................................................... 8, 11, 12

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,

    103 F.3d 9 (2d Cir. 1997) ................................................................. 7

*Zurich Am. Ins. Co. v. Team Tankers A.S.*,

    811 F.3d 584 (2d Cir. 2016) ............................................................. 9

**Statutes**

9 U.S.C. § 10 ....................................................................................... 8

9 U.S.C. § 9 .................................................................................... 7, 21

# I.     INTRODUCTION

On October 28, 2024, the Tribunal overseeing the arbitration proceeding between Defendants (Koslow Technologies Corporation and Evan E. Koslow ("collectively "KTC")) and Plaintiff (One World Filter Corporation ("OWFC")) entered a sixty-five (65) page Partial Final Arbitration Award ("Partial Final Award" or "Award") on the merits of the claims asserted by OWFC and the counterclaims asserted by KTC. *See* Ex. 1.[1]

In its Partial Final Award, the Tribunal, which was made up of three seasoned arbitrators[2], dismissed each of OWFC's claims and awarded KTC approximately $18 million in damages for unpaid license fees. The Partial Final Award is a detailed discussion of the parties' positions, the Tribunal's analysis of the facts, and the Tribunal's application of the express terms of the Agreement and law to those facts.  The Tribunals' decision was unanimous, but even if one of the three arbitrators had disagreed with the majority, the Award and outcome in this case would not have changed.

Because OWFC was unhappy with the Partial Final Award, on January 27, 2025, it filed a Motion to Vacate Arbitration Award ("Motion"). *See* Ex. 3. OWFC's Motion makes no mention of, and fails to meet, the incredibly high burden required to vacate an arbitration award. As this Court is doubtlessly aware, the Supreme Court and the Second Circuit have made it clear that the grounds to vacate an arbitration award are very limited and subject to a "heavy burden."  *See Hall Street Associates, L. L. C. v. Mattel, Inc.*, 552 U.S. 576 (2008); *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010). OWFC's Motion fails those standards.

---

[1] All exhibits are attached to the Declaration of Wesley W. Whitmyer, Jr. ("WWW Jr. Decl."), submitted herewith.
[2] *See* Ex. 2 (copies of each arbitrators resumes).

OWFC's main arguments in support its Motion are: (1) the Tribunal "exceeded its powers" by (a) "rewriting the explicit, unambiguous terms of the Agreement" and (b) "violating its contractual requirement to explain all conclusion[s] of law and fact;" (2) the Tribunal manifestly disregarded the law; and (3) the Tribunal's damages award to KTC violated public policy. *See* Ex. 4 (OWFC's Memorandum of Law in support of its Motion ("Memo")).

OWFC's arguments imply that the Tribunal conspired to exceed their powers, conspired to manifestly disregard the law, and conspired to violate public policy.  OWFC's Motion is without merit. The Tribunal thoroughly reviewed the parties' evidence (which included over 300 exhibits – amounting to over 5,000 pages)[3] and appropriately applied the explicit terms of the Agreement between the parties in finding OWFC's affirmative claims were unsupported by evidence while awarding KTC nearly $18M.

It is clear from OWFC's Memo that the only real purpose of OWFC's Motion is to delay enforcement and payment of the sums it owes KTC and hope this Court undertakes to reweigh the evidence and arguments from the Arbitration, reaching a conclusion opposite to the three arbitrators.

OWFC's transparent attempt to relitigate the facts of their underlying arbitration without colorable legal basis and should be soundly rejected by this Court.  OWFC's motion to vacate should be denied as Federal Arbitration Act ("FAA") rule and applicable case law precludes OWFC's attempt to have this Court re-evaluate and second-guess the Tribunal's findings.

---

[3] *See* Ex. 5(A)-5(O) (OWFC and KTC Joint Bundle of evidence reviewed by the Tribunal).

## II.    BACKGROUND

This lawsuit arose from a License Agreement dated June 5, 2017, and eight subsequent addendums between KTC and OWFC (the "Agreement"). Ex. 6-14. As part of the Agreement, KTC agreed to develop and manufacture a water filter ("OWF Filter Pack") for OWFC. *See* Ex. 6; Ex. 18, ¶ 18.

In its December 16, 2021 Complaint, OWFC alleged that KTC breached the Agreement. In response, KTC filed a Motion to Compel Arbitration (ECF No. 27) pursuant to Section 5.19 of the Agreement between the parties, which states in relevant part as follows:

> <u>Applicable Law and Binding Arbitration.</u> The applicable law for this Agreement is the law of the state of New York, USA. All claims and disputes arising under or relating to this Agreement are to be settled by binding arbitration in the state of New York, U.S.A. or another location mutually agreeable to the Parties. The arbitration shall be conducted on a confidential basis pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Any decisions or award as a result of any such arbitration proceeding shall be in writing and shall provide an explanation for all conclusions of law and fact and ***shall include the assessment of costs, expenses, and reasonable attorneys' fees.*** Any such arbitration shall be conducted by an arbitrator experienced in arbitrating agreements between foreign corporations and shall include a written record of the arbitration hearing. The Parties reserve the right to object to any individual who shall be employed by or affiliated with a competing organization or entity. An award of arbitration may be confirmed in any court of competent jurisdiction.

Ex. 6, § 5.19 (emphasis added).

OWFC did not oppose KTC's Motion to Compel Arbitration, and as a result, this Court ordered OWFC to arbitrate "the claims set forth in the complaint." *See* Ex. 16.

The parties subsequently agreed with the American Arbitration Association ("AAA") to resolve their dispute with a three arbitrator Tribunal, precisely to eliminate any chance of single arbitrator making an arbitrary award.

3

A.    OWFC Brings Arbitration Claims Against KTC.

OWFC commenced the Arbitration by filing a Demand for Arbitration and Statement of Claim dated April 29, 2022 ("SOC") with the International Centre for Dispute Resolution ("ICDR")[4]. Ex. 17.

In its SOC, which expressly incorporated the complaint that OWFC had filed in this Court, OWFC alleged in relevant part that KTC (1) breached the terms of the Agreement by failing to provide functional water filtration products as the License Agreement required; and (2) intentionally interfered with OWFC's exclusive rights under the Agreement by colluding with third parties to give them rights KTC had licensed to OWFC.[5] *Id.* at 1-2.

In the SOC, OWFC sought declaratory relief, specific performance, injunctive relief, monetary damages in an undisclosed amount, as well as costs, attorneys' fees, and pre-award and post-award interest.[6] *Id.* at 2-4.

B.    KTC Brings Counterclaims Against OWFC.

On October 21, 2022, KTC submitted an Answer and Counterclaim ("Counterclaim") to the SOC. Ex. 18. In the Counterclaim, KTC alleged that OWFC had: (1) breached the License Agreement by refusing to pay license fees for exclusive rights to KTC's water filter technology; (2) breached the covenants of good faith and fair dealing, as well as non-disclosure agreements that OWFC executed; (3) was unjustly enriched by failing to pay license fees for an exclusive

---

[4] The IDCR is the international division of the AAA.

[5] On September 15, 2023, OWFC added a claim that Respondents fraudulently induced OWFC to enter into the final addendum to the License Agreement.

[6] While OWFC's SOC did not state the amount that OWFC was seeking, OWFC's Complaint filed in this Court that was incorporated by reference sought damages of no less than $1,000,000,000.00. However, at the Arbitration Merits Hearing, OWFC's Counsel suggested that OWFC's damages could be closer to $5,000,000,000.00. Ex. 1 at 4. Yet, throughout the entire Merits Hearing, OWFC failed to offer a shred of expert (or other) damage testimony or evidence to support its claims.

license; and (4) tortiously interfered with KTC's prospective business opportunities by asserting rights under the License Agreement that OWFC knew it did not have. *Id.* ¶¶ 71-110.

KTC sought a declaration that the License Agreement is terminated, and demanded monetary damages, costs, attorneys' fees, and pre-award interest on those amounts as required by the arbitration provision agreed between the Parties. *Id.* at 18.

C.     Arbitrators Are Appointed and The Arbitration Proceeding Commences

On October 26, 2022, the IDCR appointed Michele S. Riley, Stephen P. Gilbert, and James P. Duffy IV as the Arbitrators in this matter ("Tribunal"). Neither OWFC nor KTC objected to the Arbitrators' appointment.

Following document production, several procedural orders, and pre-hearing written submissions, a five-day Merits Hearing was conducted in person before the Tribunal in New York, New York from January 29, 2024, through February 2, 2024. Ex. 1, ¶ 97; *see also* Ex. 19 (official Merits Hearing transcript).

At the hearing, the parties were represented by counsel, who had the opportunity to present opening statements, examine witnesses, introduce documentary evidence, present their arguments, and address the Tribunal. The Tribunal also provided the parties with the opportunity to submit Post-Hearing Written Submissions. Due at least in part to the voluminous record in the case, Post-Hearing Written Submissions were submitted to the Tribunal on June 21, 2024. *See* Ex. 20, 21.

Throughout the Arbitration, and in its Post-Hearing Written Submission, OWFC argued that KTC materially breached the Agreement by failing to deliver filters for a gravity dispenser system that were capable of meeting KTC's microbiological filtration claims. *See* Ex. 20, ¶ 9.

OWFC also argued that KTC breached the Agreement because KTC failed to (1) "fulfill the order of 0.5M filter packs for India ('IN') within 6 months of receiving payment (in or about September 2019);" (2) "develop GF-2 filter packs;" (3) "develop pressure water filters ('PWF');" and (4) "secure IAPMO certifications for GF-1, GF-2, and PWF filters." *Id.* ¶ 9(c)-(f).

However, OWFC spectacularly failed to provide any evidence to support its claims. On the contrary, KTC submitted substantial evidence to support its counterclaims. *See* Ex. 1, § III(A)-(D).

D.  <u>The Tribunal Issues Partial Final Award Against OWFC's Claims and in Favor of KTC's Counterclaims</u>

On October 28, 2024, the Tribunal issued a thorough and well-reasoned arbitration award of 65 pages addressing the claims and counterclaims raised by the parties. Ex. 1. The Tribunal unanimously rejected OWFC's arguments and determined that OWFC's claims for breach of contract failed under the express terms of the Agreement and addenda and for lack of evidence.[7]

The Tribunal awarded KTC damages of $17,346,392.00 in unpaid license fees and pre-judgment interest of $726,272.00 for its breach of contract counterclaim based on the parties' arguments. It further held that KTC is entitled to its costs, including reasonable attorneys' fees pursuant to Section R-47(c) of the AAA Commercial Rules and Section 5.19 of the Agreement.[8] *See* Ex. 1, ¶¶ 2-3.

---

[7] KTC notes that it took the Tribunal almost 10 months to issue the Partial Final Award because over 300 exhibits were produced by each party in support of their respective claims.

[8] Because both parties requested attorneys' fees in their Post-Hearing briefs, an award of attorneys' fees is permitted under Section R-47(d)(ii) of the AAA Commercial Rules and was required by the Parties' own arbitration provision.

### III.    APPLICABLE LAW AND STANDARD OF REVIEW

As a general matter, "confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *D. H Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)). The court "'must grant' the award 'unless the award is vacated, modified, or corrected.'" *Id.* (quoting 9 U.S.C. § 9). "[A]n extremely deferential standard of review" is appropriate in the context of arbitral awards "[t]o encourage and support the use of arbitration by consenting parties." *Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007). Indeed, "[o]nly a 'barely colorable justification for the outcome reached' by the arbitrator[] is  necessary to confirm the award." *D.H Blair*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Local 32B-32J, Serv. Emps. Int 'l  Union*, 954 F.2d 794, 797 (2d Cir. 1992)); *see also Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (citation and quotation marks omitted). Thus, an award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H Blair*, 462 F.3d at 110 (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)).

Accordingly, "[a] party moving to vacate an arbitration award has the burden of proof, and the showing required to avoid confirmation is very high." *D.H Blair*, 462 F.3d at 110 (citing *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997). Section 10(a) of the FAA authorizes a district court to vacate an arbitration award on only four specific and limited grounds:

> (1) where the award was procured by corruption, fraud or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to

the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

OWFC first seeks to vacate the Partial Final Award on the basis that "the arbitrators exceeded their powers." Noticeably absent from OWFC's Motion is virtually any reference to the incredibly high standard required for a court to vacate an arbitrator's ruling under the FAA. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (internal citations omitted) ("Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances.").

The problem with this argument is the same reason OWFC failed so miserably in the Merits Hearing. They offer no evidence to support their argument and in fact, the decisions and actions of the Tribunal were exactly what OWFC itself demanded that the Tribunal decide when they filed their original Statement of Case. OWFC itself put the scope of the Agreement at issue for Tribunal and empowered them to make a final binding decision.

OWFC also seeks to vacate the Partial Final Award on grounds that the Tribunal manifestly disregarded the law. KTC does not dispute that the Second Circuit recognizes manifest disregard of the law as grounds for vacatur. However, the Second Circuit has emphasized the "severely limited" nature of the judicially created manifest disregard standard. *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002); *Duferco Int'l. Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) ("Our review under the doctrine of manifest disregard is 'severely limited' . . . It is highly deferential to the arbitral

award and obtaining judicial relief for the arbitrator's manifest disregard of the law is rare.")
(citations omitted).

Indeed, in *Duferco*, the court observed that the Second Circuit's "reluctance over the
years to find manifest disregard is a reflection of the fact that it is a doctrine of last resort" *Id.*
(from 1960 until 2003, the Second Circuit vacated arbitral awards for "manifest disregard" in
only four cases). "[I]ts use is limited only to those exceedingly rare instances where some
egregious impropriety on the part of the arbitrators is apparent, but where ***none of the provisions
of the FAA apply.***" *Id.* (emphasis added).

OWFC's attempt to rely on this last resort argument is rendered even more unlikely by
the simple fact that the Award was made against them by a unanimous panel of three seasoned
arbitrators.  It's one thing for OWFC to argue that a single arbitrator somehow failed in his or her
duty, but it strains credulity to argue that all three arbitrators conspired together to manifestly
disregard the law to their detriment. And, again, OWFC fails to provide any credible application
of how the facts in the case come close to meeting the standard.

A party that implores a court to vacate an arbitration award, "bears a heavy burden" in
"seeking to vacate an arbitration award based on alleged manifest disregard of the law." *Zurich
Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016). And in the case of
"commercial contract[s]," there is a "heightened standard of deference" to the Tribunal, and the
Court can find manifest disregard "only if the arbitral award contradicts an express and
unambiguous term of the contract or if the award so far departs from the terms of the agreement
that it is not even arguably derived from the contract." *United Bhd. of Carpenters & Joiners of
Am. v. Tappan Zee Constructors, LLC*, 804 F.3d 270, 275 (2d Cir. 2015).

Lastly, OWFC seeks to vacate the Partial Final Award for violating public policy.  A reviewing court's authority to vacate on public policy grounds is restricted to "situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant" public policy, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). "[T]he public policy ground for vacatur is extremely limited.

A court's task in applying that principle is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." *N.Y.C. and Vicinity Dist. Council of United Bhd. of Carpenters and Joiners of Am. v. Ass'n of Wall-Ceiling and Carpentry Indus. of N.Y., Inc.*, 826 F.3d 611, 618 (2d Cir. 2016).

OWFC's argument fails here as well because the Tribunal unanimously determined that the Award was based on the "express" terms of the Agreement between the Parties, no construction was required, and because OWFC presented no evidence to support its claims of breach by KTC.  OWFC lost the arbitration all by itself in failing to support its claims with evidence. No issue of public policy or conflict between laws exists in this case.

## IV.    ARGUMENT

OWFC makes three arguments in support of its Motion: (1) the Tribunal exceeded its authority by (a) "rewriting the explicit, unambiguous terms of the Agreement" and (b) "violating its contractual requirement to explain all conclusion[s] of law and fact"; (2) the Tribunal

manifestly disregarded the law; and (3) the Tribunal's damages award to KTC violated public policy. Ex. 4 at 2.

A.    OWFC Has Not Met Its Burden to Prove That The Tribunal Exceeded Its Powers In Awarding KTC $18M In Damages for OWFC's Nonpayment of License Fees

Similar to the plaintiff in *Sutter*, OWFC seeks to set aside the Partial Final Award in accordance with Section 10(a)(4) of the FAA, claiming that the Tribunal "exceeded his powers." But "[a] party seeking relief under that provision bears a heavy burden. 'It is not enough to show that the [Tribunal] committed an error — or even a serious error." *Sutter*, 133 S. Ct. at 2068 (quoting *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). When deciding whether an arbitrator exceeded the scope of his powers, the court need only determine that the arbitrator had the authority to decide the issue. *See DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 824 (2d Cir. 1997).

In this particular context of damages awarded by the Tribunal, the question is not whether the Tribunal "properly awarded these damages in the case at bar" but rather whether the parties' arbitration agreement entrusted the Tribunal to "award [the disputed type of] damages generally." *Westerbeke*, 304 F.3d at 220; *see also Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 618-19 (S.D.N.Y. 2011) ("A party cannot successfully argue that the arbitrators exceeded their authority to award damages where the party did not dispute the arbitrators' authority to award damages generally, but only that they did not properly award damages under the specific facts of the case."). Put simply, the first question for the Court is whether the parties' arbitration agreement permitted the Tribunal to award the form of damages that OWFC now contests.

11

"Where an arbitration clause is broad, arbitrators have the discretion to order such remedies as they deem appropriate." *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 86 (2d Cir. 2009). Applying this well-established principle, courts have consistently refused to vacate a wide range of damages awarded by arbitrators, including attorneys' and arbitrator's fees, see *id.*, expectancy damages, *see Westerbeke*, 304 F.3d at 220, and even damages that purportedly violated a "limitation-on-damages provision" in the relevant agreement, *Sutherland Glob. Servs, Inc. v. Adam Techs. Int'l SA de C.V.*, 639 F. App'x 697, 700 (2d Cir. 2016).

In these cases, the damages award was deemed permissible because the parties' agreements vested broad discretion in the arbitrators and nothing in them expressly precluded the type of damages that the arbitrators ordered. As the Second Circuit summarized, "parties who wish to limit the scope of an arbitrator's [available remedies]" must "explicitly and clearly state that intent as part of their agreement to arbitrate." *ReliaStar*, 564 F.3d at 88.

Section 5.19 of the Agreement gives the Tribunal full authority to resolve all aspects of this dispute that were presented to the Tribunal.[9] More specifically, Section 5.19 states, in part, that "[a]ll claims and disputes arising under or relating to this Agreement are to be settled by binding arbitration in the state of New York, U.S.A., or another location mutually agreeable to the Parties. The arbitration shall be conducted on a confidential basis pursuant to the Commercial Arbitration Rules of the American Arbitration Association." Ex. 6, § 5.19. This is a paradigmatic "broad" arbitration agreement. *See Ross v. Am. Express Co.*, 547 F.3d 137, 139 (2d Cir. 2008) (holding arbitration clause providing that "[a]ny dispute, claim, or controversy . . . arising out of

---

[9] None of the Parties contested the validity of the Agreement's arbitration provision during the course of the Arbitration, and none have disputed that the arbitration provision gives the Tribunal full authority to resolve all aspects of this dispute that were presented to the Tribunal.

or relating to this Agreement" must be settled in an arbitral forum was broad).  The parties' broad arbitration agreement alone supports the conclusions that the Tribunal had ample "discretion to order such remedies as [it] deem[ed] appropriate." *ReliaStar*, 564 F.3d at 86.

Because the Tribunal had full authority to resolve all aspects of this dispute, the only hope for OWFC's argument about the Tribunal exceeding its power is whether the Tribunal strayed from its delegated task of interpreting a contract.

Any contractual basis supporting the Tribunal's decision is enough to foreclose the possibility of a court vacating the Partial Final Award.  *Sutter*, 133 S. Ct. at 2069 (Section 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly.").

Here, OWFC contends that the Tribunal exceeded its authority by awarding KTC $18 million[10] in damages. Ex. 4 at 9. Specifically, OWFC argues that the Agreement "unambiguously provides for loss of exclusive rights as the sole remedy for failure to pay license fees" thus, any damages should have been limited to OWFC's loss of exclusivity. *Id.* at 10.

Even a cursory review of the Partial Final Award leaves no doubt that it was within the Tribunal's power to award damages to KTC for OWFC's nonpayment of license fees pursuant to Addendum No. 8 of the Agreement.

Moreover, OWFC's premise that the Tribunal "rewr[ote] the explicit, unambiguous terms of the Agreement" after "failing to interpret the license fee terms" is simply wrong and logically flawed. *Id.* at 11.

---

[10] The Tribunal awarded KTC $17,346,392 in unpaid license fees, as well as pre-judgment interest of $726,272 on that amount, for a total of $18,072,664. *See* Ex. 1, ¶ 259.

The Tribunal expressly held that KTC's counterclaim for unpaid license fees succeeded **because OWFC's only excuse for not paying those fees** was OWFC's failed contention that KTC's alleged breaches excused OWFC's performance. Ex. 1, ¶ 240. The Tribunal predicated its conclusion on a detailed ***analysis*** and ***interpretation*** of both the key terms of the Agreement. *See id.* ¶¶127-136. The analysis and interpretation of the Agreement (including all eight addenda) made it clear that KTC was entitled to the unpaid license fees that OWFC contractually agreed to pay in Addendum No. 8 to the Agreement. *See id.* ¶¶ 240-253.

To come to this conclusion, the Tribunal did exactly what it was supposed to do – interpreted the Agreement and the Addenda agreed to by the parties. No rewriting of the Agreement terms was done. In fact, the Tribunal explicitly stated its decision was supported by two express terms of the Agreement.

The clear contractual basis supporting the Tribunal's damages award to KTC not only shows that the Tribunal did not "abandon[] its responsibility to interpret the agreement" or "re-writ[e] the terms of the contract," but is also enough to foreclose the possibility of a court vacating the Partial Final Award. *Sutter*, 133 S. Ct. at 2069.

OWFC sets forth this unsupported argument in an attempt to get this Court to review the Tribunal's interpretation of certain terms in the Agreement. However, disagreement with the Tribunal's legal analysis is not an authorized basis for vacatur under section 10(a)(4) of the FAA. *See Barzelatto v. Spire Sec., LLC*, 2019 WL 8889865, at *8 (S.D.N.Y. 2019) ("[A] federal district court does not sit as a court of appeals over an arbitration panel to correct errors of law."). Thus, OWFC has failed to show that the Tribunal exceeded its authority.

B.    OWFC Has Not Met Its Burden to Prove that the Tribunal Exceeded Its Powers by Violating Its Contractual Requirement to Explain All Conclusions of Law and Fact

Generally, an "arbitrator's rationale for an award need not be explained." *D.H Blair & Co.,* 462 F.3d at 110. If the parties have not requested a specific form of award, the arbitrator may issue an award that does nothing more than "announce[] the result." *Tully Constr. Co. v. Canam Steel Corp.*, 13 Civ. 3037 (PGG), 2015 U.S. Dist. LEXIS 25690, at *34 (S.D.N.Y. Mar. 2, 2015) (citing *Cat Charter. LLC v. Schurtenberger,* 646 F.3d 836, 844 (11th Cir. 2011)). However, "parties are free to contract around the default rule" and require arbitrators to issue more detailed awards. *Id.* There is no dispute in this case that the parties requested a more detailed award. *See* Ex. 6, § 5.19.

Section 5.19 of the License Agreement specifies that "Any decisions or award as a result of any such arbitration proceeding shall be in writing and shall provide an explanation for all conclusions of law and fact and ***shall include the assessment of costs, expenses, and reasonable attorneys' fees.***" *Id.* (emphasis added). The Tribunal's thorough analysis of the Agreement and detailed explanation of its conclusions of law and fact meets the requirements set forth in section 5.19 of the Agreement.

Not only does the Tribunal address every claim made by OWFC but also dedicates 22 pages of the Partial Final Award to explain why each claim made by OWFC failed. *See* Ex. 1 at 28-50. The Tribunal then dedicates another 10 pages of the Partial Final Award to explain why some of KTC's counterclaims prevailed, and why some were denied on the merits. *Id.* at 50-60.

While KTC believes that the Tribunal's thorough analysis meets the requirements set forth in the arbitration provision of the Agreement, if the Court concludes that the Partial Final Award does not provide explanations for all conclusions of law and fact, the Award should not be

vacated. Rather, the proper remedy is to remand the Partial Final Award to the Tribunal for clarification of its findings. *See Smarter Tools Inc. v. Chongqing SENCI Imp. & Exp. Trade Co.,* 18-cv-2714 (AJN) 2019 WL 1349527, at *9 (S.D.N.Y. Mar. 26, 2019) (citing *Tully Const. Co.,* 2015 U.S. Dist. LEXIS at *49-52 (concluding that remand is the proper remedy for an award that was issued in an improper form)); *see also Cannelton Industries, Inc. v. District 17, United Mine Workers,* 951 F.2d 591,594 (4th Cir. 1991) ("A court's power to vacate an award because of an arbitrator's failure to address a crucial issue necessarily includes a lesser power to remand the case to the same arbitrator for a determination of that issue."); *Siegel v. Titan Indus. Corp.,* 779 F.2d 891, 894 (2d Cir. 1985) ("[C]ourts on occasion may remand awards to arbitrators to clarify the meaning or effect of an award . . . or to determine whether the arbitrator has in some way exceeded his powers.") (internal citations omitted).

C.    OWFC Has Not Met Its Burden to Prove that the Tribunal's $18M Award Was in Manifest Disregard of the Law.

In keeping with the great deference afforded to arbitrators, it is well settled that it is not the function of the courts to review an award for errors of law or fact. *Saxis S.S. Co. v. Multifacs Intern. Traders, Inc.*, 375 F.2d 577, 581-582 (2d Cir. 1967). While the precise boundaries of the manifest disregard of the law doctrine have not been defined, it clearly "is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." *Duferco Intern Steel*, 333 F.3d 389. "A party seeking vacatur bears the onerous burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Id.*

The manifest disregard of the law standard has both objective and subjective components. In order for an award to be vacated for manifest disregard of the law by the arbitrator, the party

16

challenging the award must prove all of the following: (1) the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators; (2) that the law was in fact improperly applied meaning that no plausible reading of the arbitration award yields a legally correct justification for the outcome that can be inferred from the facts of the case; and (3) the arbitrator knew of the governing legal principle yet refused to apply it or ignored it altogether. *Id.* at 389-90. To satisfy the third subjective element, absent evidence of actual knowledge, knowledge will be inferred only if the error is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator. *Id.* at 390; *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197,202 (2d Cir. 1998). OWFC has failed to prove all of these factors.

OWFC argues that the Tribunal committed manifest disregard of the law by "stray[ing] from interpretation and application of the Agreement to effectively dispensing its own brand of industrial justice" when it awarded KTC $18 million in damages. *See* Ex. 4 at 15.  Specifically, OWFC argues that the Tribunal's $18 million award "'contradicts an express and unambiguous term of the contract' by awarding liquidated damages for unpaid license fees." *Id.*  These arguments are insufficient to meet OWFC's heavy burden for several reasons. First, OWFC ignores — and thus fails to cast doubt upon — the Tribunal's stated interpretation of the Agreement. Second, even if OWFC were to pose a proper question about the Tribunal's *interpretation of the Agreement*, that would not call into question whether the arbitrators knew of, yet refused to apply or ignored entirely, a **governing legal principle** that was clear and explicitly applicable to the matter before the arbitrators.

The Tribunal's analysis of the Agreement does not manifestly disregard the law.  Instead, the Tribunal, as part of its extensively reasoned 68-page Partial Final Award, interpreted the

Agreements, as it was required to do pursuant to the arbitration provision, in general accord with the governing legal principles for contract interpretation.[11] Far from intentionally ignoring the terms of the Agreement, the Tribunal interpreted the Agreement, the Addenda, and the facts, applied the terms of the Agreement, and concluded that a KTC was entitled to (1) damages for OWFC's failure to pay licensing fees (pursuant to Addendum No. 8) and (2) costs, including reasonable attorneys' fees (pursuant to Section 5.19 of the Agreement). *See* Ex. 1, ¶¶ 240-288 (citing to Ex. 14, §§ 6-8, Ex. 6, § 5.19).

> D.    OWFC Has Not Met Its Burden to Prove that the Tribunal's $18M Award Violates Public Policy.

A reviewing court's authority to vacate on public policy grounds is restricted to "situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant" public policy, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983). "[T]he public policy ground for vacatur is extremely limited. A court's task in applying that principle is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." *N.Y.C. and Vicinity Dist. Council of United Bhd. of Carpenters and Joiners of Am. v. Ass'n of Wall-Ceiling and Carpentry Indus. of N.Y., Inc.*, 826 F.3d 611, 618 (2d Cir. 2016).

Here, OWFC argues that the Award is in violation of "public policy against unjust enrichment and the enforcement of penalties in contracts under New York law." Ex. 4 at 16.

---

[11] The Award clearly provides more than just a "barely colorable justification for the outcome reached."  *Seneca Nation of Indians v. New York*, 988 F.3d 618, 628 (2d Cir. 2021).

More specifically, OWFC contends that the Tribunal violated public policy against unjust enrichment by awarding KTC what they call "windfall damages" of $18M, which is the total amount in license fees OWFC was required to pay KTC under the terms of the Agreement as well as pre-judgment interest. *See* Ex. 1, ¶ 259. OWFC's argument here is rich given that they demanded first one billion and then five billion in damages from KTC based on breach of the same Agreement.

OWFC argues that the terms of the Agreement "unambiguously provides for loss of exclusive rights as the sole remedy for failure to pay license fees." *See* Ex. 4 at 16. This audacious argument tries to blind the Court to the fact that OWFC has maintained exclusive rights to KTC's technology, throughout this litigation, by the cunning expedient of suing KTC and KTC's potential business partner. Indeed, until the arbitral award is confirmed, OWFC will continue to tie-up KTC's technology. Where OWFC has had the full benefit of exclusivity, while KTC has received zero dollars of the licensing fees that OWFC promised for exclusivity, it is not a "windfall" or contrary to public policy for this Court to confirm the arbitral award that OWFC must pay for the exclusive rights it enjoyed but squandered.

E.    The Court Should Award KTC Attorney's Fees

The Court should award KTC its attorney's fees incurred in this proceeding and in the arbitration. KTC is entitled to its "attorney's fees and costs" in this "suit[] for the confirmation and enforcement of [the Award]" because OWFC has "refus[ed] to abide by" the Award "without justification." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985) (quoting *Bell Prod. Eng'rs Ass'n v. Bell Helicopter Textron*, 688 F.2d 997, 999 (5th Cir. 1982)); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Prime*

*Installations Inc.*, No. 23-cv-10349 (AS), slip op. at 2 (S.D.N.Y. Jan. 19, 2024) (awarding fees under *Int'l Chem.*).

## V.    MOTION TO CONFIRM THE PARTIAL FINAL ARBITRATION AWARD

KTC, incorporating all preceding paragraphs of its Response to OWFC's Motion, now moves the Court to confirm the Partial Final Award and enter Judgment against OWFC, together with an award of interest and costs and fees as required by the arbitration provision which was invoked by OWFC.

It is clear that because the Tribunal "applied New York law to the Agreements, [] did not ignore any well-defined and clearly applicable law, [] and there was at least a 'colorable justification' for the outcome reached," it did not manifestly disregard the law, violate public policy or exceed its authority. *KT Corp. v. ABS Holdings, Ltd.*, 784 F. App'x 21, 26 (2d Cir. 2019) (affirming no manifest disregard of law "for substantially the reasons given by the district court" (Schofield, J.)).

Moreover, because OWFC failed to meet the burden of proof required to vacate an arbitration award[12], "this Court 'must accept the award without attempting an analysis of the arbitrators' purported reasoning process.'" *Barzelatto v. Spire Secs., LLC*, 2019 WL 8889865, at *10 (S.D.N.Y. Nov. 5, 2019) (quoting *Koch Oil, S.A. v. Transocean Gulf Oil Co.*, 751 F.2d 551, 554 (2d Cir. 1985)).

---

[12] The "party moving to vacate an arbitration award has the burden of proof." *Stmicroelectronics, N.V. v. Credit Suisse*, 648 F.3d 68, 74 (2d Cir. 2011) (citation omitted). "The burden is a heavy one, as the showing required to avoid summary confirmance is high." *Commodities & Minerals Enter. v. CVG Ferrominera Orinoco, C.A.*, 49 F.4th 802, 810 (2d Cir. 2022) (citation and quotation marks omitted).

As set forth above, there are no grounds to vacate, correct, or modify the Partial Final Award. As a result, the Court must confirm the Partial Final Award in all respects and should grant KTC's Cross-Motion to Confirm the Award. *See Hall St. Assocs., L.L.C.*, 552 U.S. at 587 ("[T]he court 'must grant' [confirmation] 'unless the award is vacated, modified, or corrected[.]'" (quoting 9 U.S.C. § 9)).

## VI.    CONCLUSION

For the foregoing reasons, the Court should deny OWFC's Motion to Vacate the Partial Final Award, grant KTC's Cross-Motion to Confirm the Partial Final Award, and award KTC its attorney's fees incurred in this proceeding and in the arbitration.

Respectfully submitted,

March 12, 2025                    /s/ Wesley W. Whitmyer, Jr.
                                 Wesley W. Whitmyer, Jr., WW2773
                                 WHITMYER IP GROUP LLC
                                 600 Summer Street
                                 Stamford, CT 06901
                                 Tel. 203 703-0800
                                 Fax 203 703-0801
                                 Email: litigation@whipgroup.com
                                        wwhitmyer@whipgroup.com

                                 Attorney for Defendants
                                 Evan E. Koslow and Koslow Technologies Corporation

## **L. CIV. R. 7.1(c) CERTIFICATION OF WORD COUNT**

I hereby certify that OWFC's Memorandum of Law in Support of Motion to Vacate Award is 6,306 words long and complies with the word count limitation as provided in Local Civil Rule 7.1(c) and Your Honor's Individual Rules of Practice 4(B). The word count was calculated using the word-processing program used to prepare the document.

/Wesley W. Whitmyer, Jr./
Wesley W. Whitmyer, Jr.

## CERTIFICATE OF SERVICE

This is to certify that on this 10th day of March 2025, true copies of the foregoing **MEMORANDUM OF LAW IN OPPOSITION TO OWFC'S MOTION TO VACATE AND REPLY IN SUPPORT OF CROSS-MOTION TO CONFIRM ARBITRATION AWARD and all associated documents** were served via electronic delivery upon all counsel of record for Plaintiff as follows:

Darren M. Geliebter

Antonio Papageorgiou

Eric J. Huang

230 Park Avenue, 4th Floor West

New York, NY 10169

dgeliebter@lombardip.com

ap@lombardip.com

ehuang@lombardip.com

March 12, 2025                                         */s/ Meghan E. McDermott*